Daniels, J.
The controversy includes the liability of the plaintiff for the payment of certain taxes imposed upon property in the city of New York from the year 1878 to the year 1884, inclusive. In the year 1804 the Mayor, etc., of the city of New York conveyed to Andrew Hunt lands on *87 the west side of Greenwich street, between high and low water mark, and a new street of seventy feet in width in tended to be laid out and made fronting on the North River, called West street. A similar conveyance was made of the adjacent lot by the Mayor, etc., in the same year to John Houseman. By these conveyances the land under water was conveyed to the grantees to the easterly side of the street called West street, which was then designed to be made. The westerly side of this street was intended to be the'water front of the city, upon the Hudson river, and in addition to the conveyance of the land the respective grantees were by their deeds secured the right or privilege of taking, having and enjoying “all manner of wharfage, cranage, advantages and emoluments growing to or accruing by or from the said wharf or street of seventy feet in breadth called West street, fronting on the said North river opposite to the said premises hereby granted and every part thereof.” By the terms, and as a condition of the conveyances, the grantees assumed the obligation of making and constructing West street and the bulkhead upon the water front whenever they should be directed so to do by the common council of the city. And in 1818 the common council, by resolution, directed the construction of the street and the erection of the bulkhead in front of the premises described in these deeds, but the location of the street was advanced from twenty-two to twenty-six feet farther to the west than it had been previously contemplated it should be. After the adoption of this resolution the parties acquiring title under the grantees in the deeds filled up the land and constructed the street and bulkhead, and received the wharfage, cranage, advantages and emoluments growing out of or accruing from the use of the - wharf. After that and in December, 1878, William E. Dodge, Jr., and D. Willis James obtained the title to the property, including the rights and privileges of talcing the wharfage and emoluments, for the use of the bulkhead on the westerly side of West street as a wharf.
Prior to that time and in September, 1871,_ the preceding owners of the property, including these privileges, leased and demised the wharf, or bulkhead, in front of their lands, with the rights and privileges belonging thereto, to Francis W J. Hurst for and during and until the month of May in the year 1878. He also acquired from another source the right to use and occupy a pier extending about five hundred feet into the river, and in part bounded northerly by the southerly fine of these lands. After acquiring the right to use this property, and on the 3d of August, 1871, permission was obtained by him from the department of docks to widen this pier on the north side to the extent *88 of fifty feet, and adjacent to the bulkhead as far up as the new bulkhead line which had then been adopted by the department, extending that line two hundred and fifty feet westerly from the easterly line of West street into the river. This extension of the .pier was made by Hurst building the easterly portion of the addition to the westerly line of West street, and for the use of that addition the department reserved a rental from him of- $1,750 per annum. This wharf and the addition to it, together with a shed erected over it, was used by the lessee until the expiration of the term created by the lease, when he vacated and surrendered its possession. On the 28th of July, 1876, the dock department, pursuant to legislation which was supposed to authorize that action on its part, by a resolution, directed the engineer-in-chief to build the section of a bulkhead wall to extend from the northerly end of the King street section then constructed, to the southerly end of the pile foundation between piers 46 and 47, on the North river, upon the plans submitted by him in April, 1876. This direction included this bulkhead on the westerly bounds of West street, and for this purpose piling was driven across the water front of this property between December 1, 1879, and March 5,1880, and a certain erection which had been maintained over the bulkhead by the owners of the property was removed by the authority of the corporation. And after that was done the construction of the work directed by the department was continued into the river for the purpose of erecting and maintaining the new bulkhead line. These proceedings were taken for the permanent appropriation of this property to the use of the public, and completely destroyed the bulkhead on the westerly side of West street as a wharf, rendering it wholly incapable of being devoted afterwards to that object. The owners of the property thereupon brought an action against the city to recover damages alleged to have been sustained by what was considered by them' an infringment upon their rights, and an answer to their complaint was interposed on behalf of the city.
After this litigation was at issue and the plaintiff in this action had acquired the title to the property, which he did on the 6th of March, 1882, overtures were made for its settlement, including the release of the cause of action and the extinguishment of private rights and interests in this bulkhead on the westerly side of West street. They finally resulted in a contract between the plaintiff and the other person previously interested with him and the department of docks, which was approved by the commissioners of the sinking fund, to pay to him the sum of $27,500 for the release and the extinguishment of these rights to the wharf- *89 age, etc., collectible for the use of the bulkhead. By the agreement which was entered into it was agreed that the plaintiff should execute and deliver a deed with the usual full covenants for the conveyance of the premises to the mayor, etc., of the city of New York, “free from all incumbrances except such grants or leases as the mayor, aldermen and commonalty may have themselves made.” The agreement was entered into on the 1st day of January, in the year 1885, and under this covenant it has been insisted on the part of the defendant that the taxes for the years already mentioned shall be deducted from this sum of money.
But it appears by the case that the taxes were assessed and imposed for the year 1878 and each year following down to and including the year 1883, upon what were designated as ward numbers 44 and 2640 together, at a valuation of $4,500, said 44 being designated as pier on West street. This pier, as has already been stated, was constructed, so far as it was in front of the lands conveyed by the city, by Hurst, the tenant, under a demise of the right to do so from the dock department to him. And conformable with that authority he extended the pier structure from the southerly bounds of the land northerly for the distance of fifty feet across the entire bulkhead on the westerly side of West street, which the plaintiff and his grantors were entitled to use under the conveyances executed and delivered by the city. No part of the tax, or assessment, was made upon the bulkhead itself, or upon any of the rights or privileges which the grantees under the city were entitled to enjoy for the maintenance or use of the bulkhead. But as the premises were described they were mentioned as pier on West street, and probably had reference to the enjoyment of pier 44 as that had been extended by Hurst and to no other proprietary interest. For by the diagram exhibiting the property assessed pier 44 seems to include the extension made by Hurst and the premises referred to by the number of 2,640, are mostly northerly of the extension of that pier including the land between it and pier 45. The assessment and tax being restricted in this manner from the year 1878 to and including the year 1883, was not within the covenant that the rights and interests should be conveyed free from all incumbrances, for it was specified and mentioned in the agreement that “the covenants and warranty in said deed shall not, however, extend to said piers, or the wharfage, etc., that may or can arise therefrom.” This exception had reference to the piers previously mentioned in the contract, one of which was the pier next southerly from the pier at the foot of Charlton *90 street,- as that had been enlarged and extended by Hurst under the authority of the dock department which in language provided for that, as the widening of the pier on the north side, to the extent of fifty feet, and it was accordingly within this restriction imposed upon the covenants to be inserted in the deed, and that seems to be broad enough to •exclude the claim made for these taxes against the plaintiff. '.They were not upon the rights or interests to be conveyed to the city, for notwithstanding the general language made use of in the contract it was still the intention of the parties that the city should acquire under it only the rights and interests of its grantees to the bulkhead and the release of all claims for damages because of its unwarranted act. What was added beyond this was to include any possible incidents that might be tributary to the right to collect and receive the emoluments for the use and enjoyment of the wharf. But no distinct or additional right to them had in any form been conveyed away by the city west of the westerly bounds of West street, but its grant was limited to the enjoyment by its grantees of the privileges enumerated in the deeds. And they included no more than the right to •take the wharfage, cranage and emoluments growing or accruing out of the use of the westerly side of the street as a wharf or bulkhead. Neither the pier itself as it was originally ■constructed, nor the land over which it was extended under the authority given by the department of docks to Hurst, was in any form conveyed to or vested in the grantees of the city, and were not to be conveyed by the deed to be executed under the contract. For that, according to the negotiation as well as all the contemporaneous facts, was designed to extend no further as a conveyance than the full relinquishment of the rights acquired under the deeds executed and delivered by the city. And as neither of these years’ taxes was upon this right, interest, or privilege, but was upon the pier extended in front of West street alone, and upon the ward number 2640, and the covenants of warranty were so restricted as not to be applicable to the piers, the defendant had no right to charge these taxes against the plaintiff in the settlement.
In 1884 the tax was assessed in the roll on what was called “Bulkhead, Ward number 2640,” and that, according to the diagram then made, was designed to include this bulkhead. But before that time the city had taken possession of it and had excluded the grantees from the enjoyment of the rights or privileges created by its own deeds for the use of the bulkhead as a wharf. That had been rendered impracticable in part by the piling extended across the front of' the bulkhead between the last of the year 1879 and the 5th of March, 1880. It had also taken *91 down and removed the structure which had been erected and maintained there contributory to the convenient use of the bulkhead and commenced the construction of its own works for permanently extending the bulkhead line of the city out into the Hudson river to the extent of two hundred and fifty feet westerly of the easterly fine of West street. From that time the owners of this property had been wholly and completely excluded from its possession and enjoyment by the authorities of the city, and it had been appropriated to the object of making and maintaining this permanent improvement, so far carried into execution as to render the bulkhead itself as it had been built entirely useless when the tax of 1884 was assessed against it, and as much as that is conceded by the statements contained in the agreement. And it could not have been the design of the parties, in the execution of the agreement which was made, that the taxes imposed for that year after these events had transpired should be in any form charges against the property, which by the agreement should be deducted from the purchase price. Neither this nor the other taxes were such incumbrances as could possibly exist against the property in any form after the execution and delivery of the papers provided for by the agreement. They could not survive the completion of the transaction, as it was specified and defined in the agreement which was made, for by the conveyance to the city the taxes would necessarily be merged and extinguished and would not from that time be incumbrances against the property. What was designed by the agreement was that the city should be protected in the title it was to receive from conflicting incumbrances which might be entitled to be satisfied and extinguished after the deed was executed and delivered to it. This was not such an incumbrance, and could not have been intended to be reserved by this part of the contract. The imposition of these taxes was known and understood on the part of the city, and if it had been intended to deduct them from the sum which it was agreed should be paid to the plaintiff for the property and the release of the right of action, it is only reasonable to suppose that the contract would have contained some language clearly expressive of this intention. None was inserted in it, but the city took upon itself the positive obligation to pay this sum of money for the proprietary rights, to be conveyed and released free from incumbrances, except grants or leases made by the city itself. And that, under the circumstances, wpuld not be held to have been intended to include the taxes which are now claimed in this action. As the case upon the facts has been presented, the plaintiff is entitled to judgment directing the payment of the $2,000 *92 on deposit to him, together with his disbursements in this proceeding.
Macomber and Brady, JJ., concur.